IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SAULSBURY INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 3:19-cv-224-DCG |
| | § | |
| WESTERN REFINING SOUTHWEST, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

### ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND ORIGINAL COUNTERCLAIM OF DEFENDANT WESTERN REFINING SOUTHWEST, INC.

TO THE UNITED STATES DISTRICT COURT:

Defendant Western Refining Southwest, Inc. ("Western") files its Original Answer, Affirmative Defenses, and Original Counterclaims to the Original Petition ("Complaint")[1] filed against it by Saulsbury Industries, Inc. ("Saulsbury"), and for its defenses and counterclaims would respectfully show the Court as follows:

### I.
### ORIGINAL ANSWER

Western responds as follows to the specific averments of the Complaint:

1.      As this case has been removed to federal court, paragraph 1 of the Complaint requires no response.

2.      Western admits that Saulsbury seeks monetary relief in excess of $1,000,000 for compensatory damages plus other relief, but denies that Saulsbury is entitled to any relief, and denies all other allegations in paragraph 2 of the Complaint.

---

[1] Plaintiff's Original Petition filed in the 210th Judicial District Court of El Paso County, Texas is Saulsbury's live pleading in this case.

3.    Regarding paragraph 3 of the Complaint, Western responds as follows:

    (a)    Western admits the allegations of the first sentence of subparagraph 3(a) of the Complaint.  Western lacks knowledge or information sufficient to form a belief about the truth of the averments in the second and third sentences of subparagraph 3(a) of the Complaint.  Western admits the allegations of the fourth sentence of subparagraph 3(a) of the Complaint. Western lacks knowledge or information sufficient to form a belief about the truth of the averments in the fifth sentence of subparagraph 3(a) of the Complaint.

    (b)    Regarding the first sentence of subparagraph 3(b) of the Complaint, Western admits that it is a corporation organized under the laws of the State of Arizona and that it does business in Texas, but denies that its principal place of business is in Texas, and states that its principal place of business is in Findlay, Ohio.  Western admits the allegations of the second sentence of subparagraph 3(b) of the Complaint.  Western admits that the third sentence of subparagraph 3(b) of the Complaint generally describes some of its business activities, that it owns a refinery located in Gallup, New Mexico ("Gallup Refinery"), and that Saulsbury was contracted to perform certain services with respect to that refinery pursuant to a written agreement.  Regarding the fourth sentence of subparagraph 3(b) of the Complaint, Western admits that it executed Purchase Order No. 20838842 ("PO 8842") on September 20, 2017, and Purchase Order No. 20839401 ("PO 9401") on October 27, 2017, the terms of which speak for

{00249624.DOCX}

themselves.  Regarding the fifth sentence of subparagraph 3(b) of the Complaint, Western admits that it can be served through its registered agent, CT Corporation System, and denies the remaining allegations in the fifth sentence of paragraph 3(b) of the Complaint,

4.      Western admits that the operative agreements between the parties specify that "venue and jurisdiction . . . shall be exclusive in the state or federal court(s) of competent jurisdiction in El Paso, El Paso County, Texas," and that all parties are subject to personal jurisdiction in this Court.  Western denies the remaining allegations of paragraph 4 of the Complaint.

5.      The allegations of paragraph 5 of the Complaint concern the jurisdiction of the state court and are no longer relevant to this action.  Western admits that the amount in controversy set forth in 28 U.S.C. § 1332(a) is satisfied in this case.

6.      Western responds to Saulsbury's "Factual Background" paragraph as follows:

(a)      Western admits the allegations of the first sentence of subparagraph 6(a) of the Complaint.  Western lacks knowledge or information sufficient to form a belief about the truth of the averments in the second and third sentences of subparagraph 3(a) of the Complaint, except Western admits that Saulsbury performed work at the Gallup Refinery pursuant to a written agreement.  Western admits the allegations of the fourth sentence of subparagraph 6(a) of the Complaint.

(b)      Western denies the allegations of subparagraph 6(b) of the Complaint.

(c)      Western admits the allegations of subparagraph 6(c) of the Complaint.

(d)      Regarding subparagraph 6(d) of the Complaint, Western admits that it

{00249624.DOCX}

issued PO 8842 on September 20, 2017, and PO 9401 on October 27, 2017, the terms of which speak for themselves. Western denies the remaining allegations contained in subparagraph 6(d).

(e) Regarding subparagraph 6(e) of the Complaint, Western admits that Saulsbury began work on the Gallup Refinery shortly after the purchase orders were issued, but lacks knowledge or information sufficient to form a belief about the truth of the remaining averments of subparagraph 6(e) of the Complaint.

(f) Western admits that Saulsbury performed work under PO 9401, but denies the remaining allegations of subparagraph 6(f) of the Complaint.

(g) Western admits that Saulsbury performed work under PO 8842, but denies the remaining allegations of subparagraph 6(g) of the Complaint, including sub-subparagraphs 6(g)(1) through 6(g)(5).

(h) With respect to PO 8842, Western admits that it issued Change Order No. 1 on March 10, 2018, and Change Order No. 2 on May 30, 2018, the details of which speak for themselves, resulting in a final lump-sum price in the amount of $2,204,694.45. With respect to PO 9401, Western admits that it issued Change Order No. 1 on May 30, 2018, and Change Order No. 2 on August 8, 2018, the details of which speak for themselves, resulting in a final lump-sum price in the amount of $540,345.74. Western denies the remaining allegations of subparagraph 6(h) of the Complaint.

(i) Western denies the allegations of subparagraph 6(i) of the Complaint.

{00249624.DOCX}

7.    Western incorporates by reference all previous admissions and denials as though fully set forth herein.

8.    Western denies the allegations of paragraph 8 of the Complaint.

    (a)    Western denies the allegations of subparagraph 8(a) of the Complaint.

    (b)    Western denies the allegations of subparagraph 8(b) of the Complaint.

9.    Western denies the allegations of paragraph 9 of the Complaint.

10.    Western denies the allegations of paragraph 10 of the Complaint.

11.    Western incorporates by reference all previous admissions and denials as though fully set forth herein.

12.    Western denies the allegations of paragraph 12 of the Complaint.

13.    Western denies the allegations of paragraph 13 of the Complaint.

14.    Western denies the allegations of paragraph 14 of the Complaint.

15.    Western denies the allegations of paragraph 15 of the Complaint.  Pursuant to Federal Rule of Civil Procedure 9(c), Western states that a duly-approved and fully-executed change order is a condition precedent to a price adjustment for any alleged extra work, which condition precedent was not satisfied by Saulsbury.  Specifically, paragraph 4 of the Agreement (defined below), entitled "Changes to Scope of Work," provides "[a]ll Scope Delineations, including but not limited to agreed-upon price adjustments, must be in writing and signed by both Parties."

16.    Pursuant to Federal Rule of Civil Procedure 8(b)(3), Western denies all the allegations of the Complaint except such allegations that are specifically admitted above.

## II.
## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.      For further answer, if such be necessary, Western asserts that Saulsbury's claims are barred by the provisions of the Agreement, specifically including the Changes to Scope of Work provisions contained in paragraph 4 of the Agreement.

### Second Affirmative Defense

2.      For further answer, if such be necessary, Western asserts that Saulsbury's claims are barred by payment.

### Third Affirmative Defense

3.      For further answer, if such be necessary, Western asserts that Saulsbury's claims are barred by accord and satisfaction.

### Fourth Affirmative Defense

4.      For further answer, if such be necessary, Western asserts that Saulsbury's damages, if any, were caused by Saulsbury, not Western.

### Fifth Affirmative Defense

5.      For further answer, if such be necessary, Western asserts that Saulsbury has failed to mitigate its damages, assuming it has been damaged at all.

### Sixth Affirmative Defense

6.      For further answer, if such be necessary, Western asserts that Saulsbury's breach of contract claim is barred by Saulsbury's prior breach of the Agreement.

**Seventh Affirmative Defense**

7.     For further answer, if such be necessary, Western asserts that Saulsbury's quantum meruit claim is barred by the existence of a written contract covering the provision of goods and services by Saulsbury to Western.

**Eighth Affirmative Defense**

8.     For further answer, if such be necessary, Western asserts that Saulsbury's claims are barred by offset, including without limitation Western's right of offset under paragraph 32 of the Agreement.

**Ninth Affirmative Defense**

9.     For further answer, if such be necessary, Western asserts that Saulsbury's claim for interest is precluded by paragraph 32 of the Agreement.

**III.**
**ORIGINAL COUNTERCLAIM**

Western files this Original Counterclaim against Saulsbury and, in support thereof, would respectfully show the following:

**Factual Background**

1.     Western owns and operates the Gallup Refinery, an 880-acre facility located near Gallup, New Mexico, and certain Cardlock sites.  The Gallup Refinery produces petroleum products including gasoline, diesel, propane, butane, and heavy fuels.

2.     Western and Saulsbury were already parties to an Agreement for Services – Form AN1 081611GLP (the "Agreement") dated On October 3, 2011.[2]  On March 26, 2015, Western and Saulsbury entered into an Amendment to the Agreement (the "Amendment").[3]

---

[2] A true and correct copy of the Agreement (without voluminous exhibits) is attached hereto as Exhibit 1.

[3] A true and correct copy of the Amendment is attached hereto as Exhibit 2.

{00249624.DOCX}

3.      The Agreement provided that the scope of work for which Saulsbury contracted could be changed, altered, expanded, or reduced, although any such changes in scope must be in writing and signed by both parties.  Paragraph 4 of the Agreement provides:

> [Western] may at any time order extra work, alterations, additions to or deductions from the Work outside the scope of the Work as described in Exhibit A in the form of Scope Delineations (herein so called) and the agreed compensation shall be adjusted accordingly. All Scope Delineations, including but not limited to agreed upon price adjustments, must be in writing and signed by both Parties.

4.      The Agreement also permitted Western to protect itself from loss in the event a dispute arose between the parties.  Paragraph 32 provides:

> COMPANY may withhold at any time and from time to time such other and additional amounts as may be necessary to protect COMPANY from loss on account of defective work, liens or probable liens, attorneys fees, damage or loss of COMPANY for which CONTRACTOR is or may be liable, and probable claims by COMPANY for indemnity from CONTRACTOR under this Agreement

5.      In an effort to enhance safety at the Gallup Refinery and reduce insurance premiums, Western decided to undertake a project to install water cannons at the facility (the "Project").  On July 10, 2017, Western issued request for proposal "RFP20170707 HF Mitigation and Firewater System Phase 1 Projects."  Saulsbury submitted its proposal dated August 2017 (the "Proposal") to complete the Project.[4]  The Project was bid on a lump-sum basis.  The lump-sum price on the mechanical portion was $1,737,668.00 and the lump-sum price on the electrical portion was $527,647.91.

6.      In its proposal, Saulsbury detailed the work that it proposed to perform. Saulsbury's proposal was, "based on 270 hours of hydro-excavation."  The proposal stated that

---

[4] A true and correct copy of the Proposal, which bears a confidentiality legend, is being separately **filed under seal** as Exhibit 3.

the project would take twelve weeks to complete based on fifty-hour work weeks and an average of nineteen workers on site. The proposal also stated that, "upon award of contract, Proposal and all clarifications are to be included as a part of the contract documents."

7.    Saulsbury's proposal specified that it would conduct 270 hours (27 days) of hydro-excavation work on the Project. Western accepted the proposal, believing 270 hours of hydro-excavation to be a reasonable amount of time for such work – with the balance of the work to be completed via mechanical excavation. Saulsbury subsequently requested – and Western approved – an additional 43 days of hydro-excavation due to the discovery of underground obstacles. Further into the Project, Saulsbury requested approval for another 70 days of hydro-excavation which had been performed but was not required, bringing the total number of days Saulsbury spent performing hydro-excavation to more than four times that allotted for in its original proposal. The excessive use of hydro-excavation was also caused by Saulsbury's failure to monitor or supervise its hydro-excavation subcontractor, which ultimately was replaced on the Project.

8.    The estimated completion time was 12 weeks (a total of 84 work days). Saulsbury included in its Proposal an "acceleration fee" of $158,953.01, to which Western agreed, provided that Saulsbury completed the Project by November 30, 2017.

9.    On September 20, 2017, Western issued PO 8842  to Saulsbury for the mechanical portion of the project in the amount of $1,737,668.00.[5] On March 10, 2018, Western approved Change Order No. 1 in the amount of $242,400.00[6] and on May 30, 2018, Western

---

[5] A true and correct copy of Purchase Order No. 20838842 is attached hereto as Exhibit 4.

[6] A true and correct copy of the March 10, 2018, Change Order No. 1 to PO 8842  is attached hereto as Exhibit 5.

{00249624.DOCX}

approved Change Order No. 2 in the amount of $85,219.54,[7] resulting in a final lump-sum price in the amount of $2,065,287.54 for the mechanical portion of the Project.

10.     On October 27, 2017, Western issued PO 9401  to Saulsbury for the electrical portion of the project in the amount of $499,276.28.[8]  On May 30, 2018, Western approved Change Order No. 1 in the amount of $30,291.58[9] and on August 8, 2018, Western approved Change Order No. 2 in the amount of $10,777.88,[10] resulting in a final lump-sum price in the amount of $540,345.74 for the electrical portion of the Project.

11.     Saulsbury managed schedules for the Project in a highly rudimentary fashion. Schedule updates were sporadic and minimal.  Saulsbury was less than halfway finished with the Project as of the November 30, 2017 completion deadline.  Once it was evident that Saulsbury was not going to complete the Project on time, Western and Saulsbury representatives held a series of meetings, after which new completion estimates of December 22, 2017, and later, February 23, 2018, were established.  Saulsbury failed to meet either of these estimated completion dates, and did not complete the Project until May 23, 2018.

12.     Saulsbury failed to complete its entire scope of work, which ultimately required Western to retain Western States Energy to complete the northeast section of the excavation. Western paid Western States Energy approximately $50,000 to complete Saulsbury's work. Saulsbury's use of hydro-excavation in excess of the contractual amount also resulted in additional expenses for soil disposal and bin management.  Western was required to engage

---

[7] A true and correct copy of the May 30, 2018, Change Order No. 2 to PO 8842  is attached hereto as Exhibit 6.

[8] A true and correct copy of PO 9401 is attached hereto as Exhibit 7.

[9] A true and correct copy of the May 30, 2018, Change Order No. 1 to PO 9401 is attached hereto as Exhibit 8.

[10] A true and correct copy of the August 8, 2018, Change Order No. 2 to PO 9401 is attached hereto as Exhibit 9.

{00249624.DOCX}

Advanced Chemical Transport to remove waste and material from the project site at a cost of $96,812.

13.    Western scheduled the start-up and commissioning phases based on Saulsbury's changing assurances of when the Project would be completed.  Saulsbury's repeated failures to meet its completion projections caused Western to incur unnecessary airfare, hotels, and other travel expenses for the commissioning team in the amount of $136,103.93.  The same inaccurate information caused Western to incur $17,487.57 in back charges from Longhorn Electrical to complete fiber optic installation.  Because of the delays, Western also paid for extended time for its quality assurance and quality control supervisor, Burrow Global, in the amount of $60,655.

14.    Saulsbury's late delivery of the Project also resulted in capital interest and labor charges for Western.  Western incurred at least $160,292.44 in capital interest and at least $40,441.55 in capital labor as a result of the delays.

15.    Part of Western's motivation for undertaking the Project was that it anticipated a significant reduction in insurance premiums because of the new on-site safety equipment.  If the Project was completed on time, Western would have been in a position to negotiate lower insurance premiums with its insurance carriers.  The delay in Project completion deprived Western of the anticipated savings on insurance premiums in an amount not yet quantified.

16.    After the Project was completed, Saulsbury submitted a number of additional invoices containing charges for work that was not approved by Western, including the acceleration fee that was not owed because Saulsbury did not complete the Project by November 30, 2017, and the additional expense for the hydro-excavation that was not required.  Western disputed the invoices.

17.     Saulsbury then submitted additional invoices for alleged interest owing on the outstanding invoices.  Saulsbury sent at least three invoices to Western for interest on amounts that Western properly withheld under the Agreement.  Section 32 of the Agreement expressly gave Western the right to withhold amounts owed to Saulsbury as necessary to protect Western from loss and made no provision for interest.

## IV.
## CLAIM FOR RELIEF

1.     Western incorporates by reference paragraphs 1 through 15 of its Counterclaim as though fully set forth herein.

2.     Western and Saulsbury entered into the Agreement, as amended.  The Agreement, Amendment, and the incorporated terms of Saulsbury's proposal are valid, binding contracts.

3.     Saulsbury's actions described above breached these contracts.

4.     Western has been damaged by Saulsbury's failure to comply with the Agreement in an amount of at least $561,802.49, exclusive of damages relating to loss of the anticipated savings on insurance premiums.

5.     All conditions precedent to the assertion of this claim have occurred or been performed, or have been waived or excused by Saulsbury.

## V.
## ATTORNEYS' FEES

1.     This is a claim for the breach of a written contract.  Accordingly, under Texas law, Western is entitled to recover its reasonable attorneys' fees.  TEX. CIV. PRAC. & REM. CODE § 38.001(8).

2.     Accordingly, Western respectfully requests that the Court award Western its reasonable attorneys' fees in prosecuting this action.

## VI.
## <u>JURY DEMAND</u>

3.      Pursuant to Federal Rule of Civil Procedure 38, Western demands trial by jury on all issues so triable.

## VII.
## <u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, Defendant and Counter-Plaintiff Western Refining Southwest, Inc. prays that Plaintiff and Counter-Defendant Saulsbury Industries, Inc. take nothing by this action and that its claims be dismissed with prejudice.   Western further prays that it have judgment on its counterclaim, and recover from Saulsbury its actual damages, attorneys' fees, and costs of suit.   Specifically, Western prays for judgment against Saulsbury as follows:

a.      Saulsbury takes nothing by this action;

b.      Western be awarded its actual damages in an amount to be proven at trial;

c.      Western be awarded pre-judgment and post-judgment interest;

d.      Western be awarded attorneys' fees and costs of suit; and

e.      Western be awarded such other and further relief, general and special, legal and equitable, to which Western may show itself to be justly entitled.

{00249624.DOCX}

Respectfully submitted,


By: */s/ Paul L. Mitchell*
      Paul L. Mitchell
      State Bar No. 14217920
      pmitchell@hicks-thomas.com
      Courtney E. Ervin
      State Bar No. 24050571
      cervin@hicks-thomas.com
      Nicholas Zugaro
      State Bar No. 24070905
      nzugaro@hicks-thomas.com
      Hicks Thomas LLP
      700 Louisiana, Suite 2000
      Houston, Texas 77002
      Tel: 713.547.9100
      Fax: 713.547.9150

ATTORNEYS FOR DEFENDANT
WESTERN REFINING SOUTHWEST, INC.


## CERTIFICATE OF SERVICE

I certify that on August 21, 2019, the foregoing Original Answer and Counterclaim was served on the following counsel of record via email and the Court's ECF system as follows:

Mr. Jeffrey T. Lucky
RAY, PEÑA & MCCHRISTIAN, P.C.
5822 Cromo Dr., Suite 300
El Paso, Texas 79922
jlucky@raylaw.com


      */s/ Paul L. Mitchell*
      Paul L. Mitchell